[No. D038757. Fourth Dist., Div. One. Jan. 28, 2002.]

HIKMAT JABRO et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
WILLIAM HILL, Real Party in Interest.

**COUNSEL**

Gordon & Rees, Kenneth S. Perri and Jan K. Buddingh, Jr., for Petitioners.

No appearance for Respondent.

Fagan & Fagan, Craig P. Fagan and Stuart E. Fagan for Real Party in Interest.

**OPINION**

**McINTYRE, J.**—We hold here that before a trial court may enter an order allowing discovery of financial condition information under Civil Code section 3295, subdivision (c) (all statutory references are to the Civil Code unless otherwise specified), it must (1) weigh the evidence presented by both sides, and (2) make a finding that it is very likely the plaintiff will prevail on his claim for punitive damages.

Hikmat Jabro and Saad Matti have petitioned this court for a writ of mandate reversing an order entered pursuant to section 3295, subdivision (c) (section 3295(c)) allowing discovery of their financial condition. Jabro and Matti contend the superior court erred in allowing discovery because it considered only evidence in favor of discovery submitted by plaintiff and real party in interest, William Hill, and concluded that Hill needed only to present evidence of a prima facie case supporting a claim for punitive damages—that is, evidence sufficient to avoid summary judgment on the issue.

We issued an order to show cause and a temporary stay, and for the reasons set forth below, we issue a writ of mandate directing the trial court to vacate its order granting discovery of Jabro's and Matti's financial condition and to reconsider the matter applying the standard articulated above. The temporary stay shall remain in effect until the court has ruled on the issue.

### Factual and Procedural Background

The underlying suit arises out of an altercation between Hill and Matti outside of a convenience store owned by Jabro. Hill alleges that Matti hurled racial slurs at him and beat and seriously injured him, while Jabro yelled encouragement. Hill's complaint includes a claim for punitive damages, and after discovery, he moved for an order under section 3295(c) authorizing disclosure of Matti's and Jabro's financial condition. At the hearing, the court initially suggested that the parties stipulate to a process by which Matti and Jabro would gather documents pertaining to their financial condition, bring them to trial under seal and make them immediately available to Hill should the jury find that Matti and/or Jabro were guilty of malice, oppression or fraud in the first phase of a bifurcated proceeding. This is a frequently used and effective means of handling the matter when a claim for punitive damages is alleged. However, while Matti and Jabro agreed to this process, Hill did not. The court then granted Hill's motion. In doing so, it did not weigh the evidence presented by both sides. Rather, the court concluded Hill was entitled to discovery because he made a prima facie showing sufficient to avoid summary judgment on his punitive damages claim—which the court held is all that is required under section 3295(c).

### Discussion

Under section 3295(c), pretrial discovery of a defendant's financial condition is generally not permitted. However, the statute also provides: "Upon

motion by the plaintiff . . . the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim [for punitive damages]."

Section 3295(c) (Sen. Bill No. 1989 (1979-1980 Reg. Sess.)) was enacted in 1980 in order to protect defendants from being subjected to pretrial discovery into their financial affairs until a plaintiff establishes the likelihood he will prevail on his punitive damages claim. (See *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1151 [74 Cal.Rptr.2d 510].) As stated by the bill's author, Senator Kenneth L. Maddy, the statute is "intended to protect defendants from being pressured into settling nonmeritorious cases in order to avoid divulging their financial privacy in civil discovery." (Sen. Kenneth L. Maddy, letter to Governor Edmund G. Brown, Jr., Sept. 2, 1980, p. 4.)

Although enacted in 1980, there is not a published case in which section 3295(c) is specifically at issue and interpreted. The legislative history reveals that Senate Bill No. 1989, section 2, enacted as section 3295(c), was proposed to further a suggestion made by the court in *Cobb v. Superior Court* (1979) 99 Cal.App.3d 543, 550 [160 Cal.Rptr. 561] that trial courts require a prima facie showing of the right to punitive damages before allowing discovery of the financial affairs of the defendant. (Sen. Kenneth L. Maddy, letter to Governor Edmund G. Brown, Jr., *supra*, p. 4.) The court in *Cobb* noted that the Legislature had approved of such an approach when, in 1979, it enacted section 3295, subdivision (a), which states that for good cause shown, the court may require the plaintiff to produce evidence of a prima facie case of liability for punitive damages prior to introducing evidence of the financial condition of the defendant at trial. (*Cobb v. Superior Court, supra*, 99 Cal.App.3d at p. 550, fn. 4; § 3295, subd. (a).) Section 3295(c) goes farther than section 3295, subdivision (a) and the suggestion in *Cobb*, as it "actually requires that the plaintiff establish 'that there is a substantial probability that the plaintiff will prevail on the (punitive damage) claim' . . . ." (See Sen. Kenneth L. Maddy, letter to Governor Edmund G. Brown, Jr., *supra*, p. 4; compare § 3295, subd. (a) with 3295(c).)

Indeed, the Senate Committee on the Judiciary noted that under Senate Bill No. 1989, "in order for the plaintiff to discover evidence of defendant's wealth or of profits made through wrongful conduct, *he would first be required to prove his case, with the burden of beyond a reasonable doubt, in a sort of 'mini-trial' before the judge.*" (Sen. Com. on Judiciary, Analysis of

Sen. Bill No. 1989 (1979-1980 Reg. Sess.) as amended, Apr. 28, 1980, italics added.) Similarly, the Conference Committee on Senate Bill No. 1989 reported that the legislation "Preclude[s] a plaintiff from using pretrial discovery to obtain evidence of the defendant's financial condition or profits unless ordered by the court *upon a finding that the plaintiff will prevail on the claim authorizing punitive damages.*" (Conf. Com. Rep. on Sen. Bill No. 1989 (1979-1980 Reg. Sess.) as amended, July 2, 1980, italics added.)

Against this backdrop of legislative intent, in which protecting the financial privacy of defendants is paramount, we interpret the language of section 3295(c), requiring the trial court to find based on supporting and opposing affidavits that the plaintiff has established there is a substantial probability he will prevail on his claim for punitive damages, to mean that before a court may enter an order permitting discovery of a defendant's financial condition, it must (1) weigh the evidence submitted in favor of and in opposition to motion for discovery, and (2) make a finding that it is very likely the plaintiff will prevail on his claim for punitive damages. In this context, we interpret the words "substantial probability" to mean "very likely" or "a strong likelihood" just as their plain meaning suggests. We note that the Legislature did not use the term "reasonable probability" or simply "probability," which would imply a lower threshold of "more likely than not."

Because the trial court did not weigh the evidence from both sides in this case, and permitted financial condition discovery based on a finding that Hill had made a prima facie showing sufficient to avoid summary judgment on his claim for punitive damages, we issue a writ of mandate directing the court to vacate its order granting discovery of Jabro's and Matti's financial condition and to reconsider the matter applying the standard set forth in this opinion.

In making this ruling, we note that the trial court's and Hill's reliance on *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719-720 [34 Cal.Rptr.2d 898, 882 P.2d 894] and *Looney v. Superior Court* (1993) 16 Cal.App.4th 521, 538 [20 Cal.Rptr.2d 182] is misplaced. *College Hospital* involved the interpretation of Code of Civil Procedure section 425.13, subdivision (a), which bars the inclusion of a punitive damages claim in certain actions against health providers, unless the trial court finds on the "basis of the supporting and opposing affidavits" that the plaintiff has established a " 'substantial probability' that he 'will prevail' " on the claim. (*College Hospital Inc. v. Superior Court, supra,* 8 Cal.4th at p. 709; Code Civ. Proc., § 425.13, subd. (a).) The court in *College Hospital* was concerned with maintaining the traditional role of the trier of fact with respect to punitive damages claims against healthcare providers, and interpreted this

provision as requiring trial courts to allow a plaintiff to amend his complaint to add a claim for punitive damages if he makes a prima facie showing of entitlement to relief—that is, the plaintiff must state and substantiate a "legally sufficient claim" adequate to avoid summary judgment. (*College Hospital Inc. v. Superior Court, supra,* 8 Cal.4th at pp. 719-720, & fn. 5.) The court concluded that a contrary interpretation would "trump" the factfinding process. (*Id.* at p. 719.) Similarly, the court in *Looney* interpreted the term "substantial probability" in Code of Civil Procedure section 425.13 as imposing a burden only to demonstrate " 'a sufficient prima facie showing of facts to sustain a favorable decision if the evidence submitted by the [plaintiff] is credited.' " (*Looney v. Superior Court, supra,* 16 Cal.App.4th at p. 539, quoting *Hung v. Wang* (1992) 8 Cal.App.4th 908, 931 [11 Cal.Rptr.2d 113].) The court found that "[s]uch a construction of the statute is necessary in order to avoid the conclusion that [Code of Civil Procedure section 425.13] unconstitutionally invades the right to a jury trial." (*Looney v. Superior Court, supra,* 16 Cal.App.4th at pp. 537-538.)

In contrast, section 3295(c) concerns a defendant's right to privacy and protection from being forced to settle unmeritorious lawsuits in order to protect this right. It is a discovery statute and does not implicate the traditional factfinding process or the right to a jury trial in any way. Indeed, section 3295(c) expressly states that an order thereunder "shall not be considered to be a determination on the merits of the claim or any defense thereto and shall not be given in evidence or referred to at the trial." (§ 3295(c).)

Finally, although no court has specifically addressed section 3295(c) and interpreted the statute as allowing financial condition discovery based on a prima facie showing sufficient to avoid summary judgment, a secondary source has articulated this standard relying on *Looney v. Superior Court, supra,* 16 Cal.App.4th at page 537. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 8:339.4, p. 8C-92.) As set forth above, such interpretation is erroneous and contrary to the Legislature's intent in enacting section 3295(c).

## DISPOSITION

Let a writ of mandate issue ordering the Superior Court of San Diego County to vacate its order allowing financial condition discovery of Jabro and Matti and to reconsider the matter pursuant to the process and standard

set forth in this opinion. The stay issued by this court shall remain in effect until the matter has been reconsidered and ruled on by respondent. Costs are awarded to petitioners.

Benke, Acting P. J., and O'Rourke, J., concurred.